MILDRED E. POWLEY, Trustee, Respondent, *v.* THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

First Department, June 16, 1939.

*Peter C. Mann* of counsel [*Samuel M. Lane* with him on the brief; *Alexander & Green*, attorneys], for the appellant.

*Theodore J. Miller* of counsel [*Dunnington, Bartholow & Miller*, attorneys], for the respondent.

GLENNON, J. This action was instituted by plaintiff upon two policies of life insurance issued by the defendant on November 23, 1927, for the face amount of $1,000 each. The policies provided for the payment of an additional sum of $1,000 each upon proof that the death of the assured resulted solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means, provided that said death should not be the result of or be caused directly or indirectly by disease or illness of any kind.

Defendant in its answer admitted the death of the assured but denied that the death resulted from external, violent and purely

accidental means. It admitted its liability under each of the policies in the sum of $957.28, being the amount due after certain adjustments were made for advances.

The court at Special Term has found, among others, the following facts:

" 5. That the primary cause of death of the assured, Robert E. Powley, on the 30th day of August, 1934, was the drinking of an excessive quantity of alcohol.

" 6. That the death of the assured was not the result of suicide.

" 7. That the death of the said assured was accidental, unexpected, and not anticipated by the assured."

As a conclusion of law the court determined " that the death of the assured was within the provisions of the said policies providing for ' double indemnity in case of death from accident.' " While there are other findings of fact and conclusions of law, it is unnecessary to set them forth herein, since the sole question to be determined is whether or not the death of Robert E. Powley was caused solely by external, violent and purely accidental means.

While the death certificate which was offered in evidence by the plaintiff assigns as the cause of death carbon monoxide poisoning, the court found as a fact that the death was caused by the drinking of an excessive amount of alcohol. There is nothing in the evidence with the exception of the opinion of the attending physician to indicate that the deceased suffered from carbon monoxide poisoning. Therefore, the trial justice properly held that the immediate cause of death was " the drinking of an excessive quantity of alcohol," in other words, acute alcoholism, in short, a paralysis of the respiratory center of the brain.

We do not believe that the contracts of insurance in this case were intended to cover a death which resulted solely from an over indulgence of alcoholic beverages. The attending physician, in the death certificate, set forth that the duration of the condition of acute alcoholism was for a period of ten hours immediately preceding death. According to his testimony, he called at the home of his patient about ten o'clock at night and found him " severely " intoxicated. He removed him to Nassau County Hospital at Mineola about midnight. In the interim he saw Powley take several more drinks. At the hospital the doctor administered paraldehyde to quiet the patient. Death ensued at one-fifty-five o'clock, about two hours after the patient was admitted to the hospital.

The court at Special Term based its decision on the authority of *Mansbacher* v. *Prudential Ins. Co.* (273 N. Y. 140). The court also cited the case of *Gallagher* v. *Fidelity & Casualty Co.* (163 App. Div. 556; affd. 221 N. Y. 664). In the latter case it appeared

that the assured had suffered a physical experience as the result of a sunstroke. The holding was that the injury resulted from an accident within the meaning of the policy there under consideration. In the *Mansbacher* case, which went through this court (247 App. Div. 378), it appeared that the assured was suffering from an earache. About two years prior thereto he had used veronal to relieve the pain of an earache from which he suffered occasionally. He had some of the drug on hand since his doctor, a few weeks before his death, had directed him to use it for the purpose of aiding him to sleep. He tried without success to find some aspirin at his home and then determined to use veronal. By mistake and also by accident he took an overdose and as a result he died three days later. This court in reversing the determination of the Appellate Term which had set aside a judgment of the City Court of the City of New York in favor of the plaintiff, and directed judgment in favor of defendant, held that the death was accidental within the meaning of the policy. In affirming the judgment, Chief Judge CRANE said in part: " The plaintiff's case comes within the coverage of this policy. Her husband intended to take veronal but he never intended to take a lethal dose, nor did he intend to take enough to do him any harm; he desired to get relief from pain, not relief from life. He took too much veronal; it was a mistake, a misstep, an unexpected effect from the use of his prescribed medicine. It was an accident, and must have been an accident unless it was intentional. In other words, if the insured did not intend to kill himself he intended to take enough veronal, as he had done theretofore, to relieve the pain of earache. By mischance he took too much. His death was accidental and, as we use these words in common parlance, we would speak of it as an accidental death. Contracts are to be interpreted in the light of the language which we commonly use and understand; in other words, our common speech. Such at least should be the rule applied to the interpretation of these policies, and which we sometimes refer to as a liberal construction. (*Abrams* v. *Great American Ins. Co.*, 269 N. Y. 90; *Van Vechten* v. *American Eagle Fire Ins. Co.*, 239 N. Y. 303.) "

Where, as in this case, an assured consumes an amount of alcohol sufficient to cause acute alcoholism and dies as a result thereof, we are of the opinion that the death does not occur through " accidental means " or " by means of an accident." We are constrained to hold, therefore, that the judgment appealed from should be modified by declaring the principal amount due under the terms and conditions of each policy to be $957.28, with interest from August 30, 1934, and as so modified affirmed, without costs to either party to the appeal.

MARTIN, P. J., UNTERMYER, COHN and CALLAHAN, JJ., concur.

Judgment unanimously modified by declaring the principal amount due under the terms and conditions of each policy to be $957.28, with interest from August 30, 1934, and as so modified affirmed, without costs. The findings inconsistent with this determination should be reversed and such new findings made of facts proved on the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.