Froessel, J.
This is an action by a judgment creditor under section 167 of the Insurance Law to compel the defendant insurer to pay a judgment to the extent of its coverage under an automobile liability policy. Plaintiff is the widow and executrix of one Richard Sperling, who was killed in an automobile accident on December 30,1957. In a wrongful death action instituted against one Christine Nystrom, the latter’s negligence was adjudged to have been the proximate cause of the death of plaintiff’s husband, and plaintiff recovered a judgment of approximately $125,000.
The judgment debtor, Christine Nystrom (herein called Christine), was 16 years of age at the time of the accident. She had a learner’s permit to operate a motor vehicle. Sometime between 12:30 and 1:00 p.m. on December 30, 1957, she appropriated a 1956 Chevrolet automobile bearing Ohio license plates, without the permission of the owner. The car was parked on a public street in Mount Vernon, and Christine started the motor merely by turning the ignition switch. While driving south on Hutchinson River Parkway she was pursued by a police officer who recognized her, and whose suspicion was aroused by the Ohio plates. In her attempt to outrace him, the car she was driving swerved into the extreme right lane of southbound traffic, and she negligently struck the rear of decedent’s vehicle, as a result of which decedent was fatally injured. Christine was subsequently adjudged a youthful offender.
Ruth Nystrom, Christine’s mother, was the named insured in a “ Family Automobile Policy ” which was in full force and effect on the day of the accident. The policy specifically covered a 1956 Buick car owned by Mrs. Nystrom, and also provided family protection with respect to nonowned automobiles. Under the heading “Persons Insured”, the policy provided, in pertinent part:
*446 ‘ ‘ The following are insureds under Part I [Liability]:
“ (a) With respect to the owned automobile, (1) the named insured and any resident of the same household, (2) any other person using such automobile, provided the achial use thereof is with the permission of the named insured;
“ (b) With respect to a non-owned automobile, (1) the named insured, (2) any relative, but only with respect to a private passenger automobile or trailer not regularly furnished for the use of such relative; ” (emphasis supplied).
The term “ relative ” was defined in the policy as meaning “ a relative of the named insured who is a resident of the same household ”, and the term “non-owned automobile ” was defined as meaning ‘ ‘ an automobile or trailer not owned by the named insured or any relative, other than a temporary substitute automobile ”. An “ owned automobile ” was defined as meaning “ a private passenger or utility automobile or trailer owned by the named insured, and includes a temporary substitute automobile ” (used “as a substitute for the owned automobile” when “withdrawn from normal use”). The term “named insured ’ ’ was defined as including a spouse resident in the same household.
Thus, under the express terms of the policy, permission to operate an automobile was relevant only in the case of a nonresident third person driving Mrs. Nystrom’s Buick or a temporary substitute therefor. With respect to a nonowned vehicle, the coverage afforded the named insured was without qualification, i.e., it included any utility or private passenger automobile, while the coverage of a relative was limited to private passenger automobiles not regularly furnished for his or her use. In neither of the latter situations was the permission of the owner of the nonowned automobile called for.
The insurer refused to defend Christine in the wrongful death action, disclaiming liability under the policy, and refused to pay any part of the judgment entered against her. Plaintiff thereupon commenced the instant action to recover the policy limit of $100,000, plus costs awarded against Christine in the wrongful death action and interest on the judgment, and was awarded summary judgment as prayed for. It is conceded that plaintiff’s rights against the insurer under section 167 of the Insurance *447 Law are no greater than Christine’s (Wenig v. Glens Falls Ind. Co., 294 N. Y. 195, 198-199, and cases therein cited).
On this appeal, the insurer ‘ ‘ concedes that Christine Nystrom, as the daughter of the named insured and a resident of the same household, is a relative within the definition of that term in defendant’s policy ”. It also concedes that the Ohio car “ was not regularly furnished for the use of Christine Nystrom ’ ’, since a “ stolen ” car is “ not ‘ furnished ’ at all ”. It contends, however, that ‘ ‘ the word ‘ furnished ’ implies consent and permission, so that the phrase ‘ not regularly furnished for the use of ’ can only he interpreted to mean an automobile voluntarily supplied by the owner to such relative for occasional as distinguished from regular use.”
Since permission to use a nonowned automobile was not made a condition of coverage with respect to a relative of the named insured, “ The court is not at liberty to inject a clause into the policy or to make a new contract for the protection of the insurance company” (Taylor v. United States Cas. Co., 269 N. Y. 360, 363). When the insurer wished to indicate that permission of the owner of a vehicle was a condition of coverage, it clearly did so, as noted, in the case of a nonresident third person driving the named insured’s vehicle, or a temporary substitute therefor. The policy did not exclude, as an insured, a relative who was driving a nonowned automobile without the permission of the owner, and, as the court noted in Ætna Cas. & Sur. Co. v. General Cas. Co. (285 App. Div. 767, 770), cited “with other reliable authorities” in Greaves v. Public Serv. Mut. Ins. Co. (5 N Y 2d 120, 125), “If an exclusion of liability is intended which is not apparent from the language employed, it is the insurer’s responsibility to make such intention clearly known. (Morgan v. Greater N. Y. Taxpayers Mut. Ins. Assn., 305 N. Y. 243, 248) .
To read the requirement of permission into the word “ furnished ” would not only entail rewriting the phrase “ not regularly furnished” so as to read “occasionally furnished, with the permission of the owner ” — thereby converting the negative condition “ not regularly furnished ’’into an affirmative condition that the car be “furnished” — but would distort the purpose which the limitation of coverage was plainly *448 designed to serve. The exclusion of coverage for relatives driving nonowned automobiles was, by its terms, concerned with regularity of use, not permissiveness of use, and was designed to protect the company from being subjected “ to greatly added risk without the payment of additional premiums ” (Vern v. Merchants Mut. Cas. Co., 21 Misc 2d 51, 52 [App. Term]).
The “ greatly added risk ” which the insurer was unwilling to incur for a single premium was not the prospect of a relative appropriating a car without the owner’s permission and then negligently causing injury, but the multiplication of potential liability situations where a nonowned automobile was regularly used or available for regular use by a relative (see Vern v. Merchants Mut. Cas. Co., supra; Rodenkirk v. State Farm Mut. Auto. Ins. Co., 325 Ill. App. 421, 433; Lumbermen’s Mut. Cas. Co. v. Pulsifer, 41 F. Supp. 249, 251; Campbell v. Ætna Cas. & Sur. Co., 211 F. 2d 732, 736; Wyatt v. Cimarron Ins. Co., 235 F. 2d 243, 246; Pennsylvania T. & F. Mut. Cas. Ins. Co. v. Robertson, 259 F. 2d 389, 393).*
While the insurer agreed, for a single premium, to afford coverage to the named insured while driving any nonowned vehicle, whether regularly furnished or not, it limited its single premium coverage of relatives of the named insured' to non-owned private passenger automobiles “ not regularly furnished for the use of” said relative. So long as the insurer is not called upon to indemnify a relative for any liability incurred while driving a car ‘ ‘ regularly furnished ’ ’ for his or her use, the limitation of coverage has been satisfied and the insurer has no just cause for complaint.
Moreover, if the policy is construed as affording coverage to a relative only when the owner of the “ non-owned automobile ” consented to its use, then the relative would, in many, if not most cases, be obtaining no more coverage that he would already have under the policy issued to the owner of that automobile. At the *449 time the policy in question was issued (October 17, 1957), automobile liability insurance was compulsory (Vehicle and Traffic Law, art. 6-A, eff. Feb. 1,1957), and every policy issued to a car owner in this State had to contain an omnibus clause insuring, in addition to the named insured, any person operating the vehicle with the permission of the named insured (Insurance Eeg. 35; N. Y. Off. Comp, of Codes, Eules & Eegulations [12th Off. Supp.] p. 697; adopted pursuant to Insurance Law, § 21, and Vehicle and Traffic Law, § 93-a). The person so operating the vehicle with the permission of the owner is afforded coverage as an additional insured, and is treated as if he had a separate policy (Greaves v. Public Serv. Mut. Ins. Co., 5 N Y 2d 120, supra). By not requiring the permission of the oxvaer of a nonowned automobile in the policy before us, the insui >r must be deemed to have intended to afford additional covei age to relatives above and beyond the coverage that would autunatically attach under the owner’s policy to any person using the car with the owner’s consent.
What the insurer is really arguing here is that the policy was never “intended” to cover a relative who negligently caused injury with a “ stolen ” car, and had it been aware that the terms of the policy literally covered such a situation, it would have provided against it, as it has in the new, revised Family Automobile Policy. As Special Term correctly held, however, ‘ ‘ The company is bound by the plain terms of its policy rather than by what it may have intended”, since, in construing a “ plain contract, clear and explicit in its terms ”, a court is not at liberty, because of equitable considerations, “to obviate objections which might have been foreseen and guarded against” (Weinberg & Holman v. Providence Washington Ins. Co., 254 N. Y. 387, 390-391).
It could equally be argued that the policy was never “ intended ” to cover a named insured who negligently caused injury with a “ stolen ” car. Yet, were it Mrs. Nystrom (or her husband, assuming he was a resident in the same household), rather than Christine, who was involved here, there can be no question that she (or he) would have been covered, as the policy afforded blanket coverage to the named insured while driving any “ non-owned automobile”, whether “regularly furnished” or not. We see no logical basis of distinction *450 between the named insured and a relative with respect to coverage while driving a “stolen” car. Such a distinction can be drawn only by giving the phrase ‘1 not regularly furnished for the use of” a strained and artificial construction, and applying it to a risk it was plainly not designed to guard against. The quoted phrase may not be read as meaning merely “furnished occasionally”; by its plain language it includes a car not furnished at all, and hence ‘ ‘ implications ’ ’ are completely irrelevant. It is not synonymous with ‘1 stolen ’ ’, but includes “stolen” cars, which are in the same class as cars taken without permission (Penal Law, §§ 1290, 1293-a), or on a “ joy-ride ” (Block v. Standard Ins. Co. of N. Y., 292 N. Y. 270, 274/.
In Wilson Sullivan Co. v. International Paper Makers Realty Corp. (307 N. Y. 20, 25), in answer to the argument “ that when read as a whole, the agreement implies that it was designed and dra vn with the sole idea that defendant would have a right to te'.mínate it by selling the building”, we stated: “A simple answer is that since no such term expressly appears, it cannot be supplied by the courts under the guise of construction or interpretation, their power being limited to giving effect only to the parties’ expressed intent [citing cases and other authority]. We ‘concern ourselves with what the parties intended, but only to the extent that they evidenced what they intended by what they ivrote ’ (Raleigh Associates v. Henry, 302 N. Y. 467, 473).” (Emphasis supplied.) The above rule is particularly applicable to a contract of insurance, since it ‘ ‘ was written by the insurer and any ambiguity is to be resolved against it ” (Greaves v. Public Serv. Mut. Ins. Co., supra, p. 125). “If the intent was to exclude” coverage where the vehicle was appropriated without the permission of the owner, “ it would have been easy to say so ” (Greaves v. Public Serv. Mut. Ins. Co., supra).
Davidson v. Firemen’s Fund Ind. Co. (4 A D 2d 759, affd. 5 N Y 2d 838), relied upon by the insurer, is not in point here. In that case, the named insured’s son borrowed his brother-in-law’s car when his father’s car would not start, and it was held that the borrowed car could not be considered a “temporary substitute automobile ” within the meaning of the policy since neither the named insured nor the owner of the borrowed ear *451 consented to its use by the son. The son unsuccessfully argued that, since he had his father’s permission to drive the insured vehicle, that permission extended to the borrowed car. Permission was concededly a requirement for coverage under the policy, whereas here permission was not a condition of coverage with respect to the use of a nonowned automobile by a relative of the named insured.
The insurer further contends that it would be against public policy to require it to pay the bulk of the judgment recovered against Christine, since she 1 ‘ would accordingly be the beneficiary of the result of her own crimes ”. This argument is foreclosed by the decision of this court in Messersmith v. American Fid. Co. (232 N. Y. 161).
There was no proof in the wrongful death action that Christine intentionally collided with decedent’s car nor were there allegations to that effect in the complaint. On the contrary, the complaint was framed solely in terms of negligence in the operation of a motor vehicle, and the judgment in favor of plaintiff, as the insurer concedes, was based solely on ‘ ‘ the negligence of the infant defendant”. The fact that Christine had previously misappropriated the car with which she negligently caused the death of plaintiff’s husband was wholly irrelevant in the wrongful death action, since ‘ ‘ Injuries are accidental or the opposite for the purpose of indemnity according to the quality of the results rather than the quality of the causes.” (Messersmith v. American Fid. Co., supra, p. 165; emphasis supplied.) (See, also, Davis v. Detroit Auto. Inter-Ins. Exch., 356 Mich. 454, and Sky v. Keystone Mut. Cas. Co., 150 Pa. Super. Ct. 613.)
As Judge Cakdozo further pointed out in the Messersmith case (supra, pp. 163, 164), liability in tort for the negligent operation of a vehicle “ can seldom, if ever, be incurred without fault that is also crime”, and “ To restrict insurance to cases where liability is incurred without fault of the insured would reduce indemnity to a shadow ’ ’. The insurer here has been called upon to indemnify Christine against the consequences of her negligence in the operation of a motor vehicle, not against the criminal consequences stemming from her willful misappropriation of the vehicle. The manner in which she acquired the vehicle had nothing whatever to do with her liability for its negligent operation.
The judgment should be affirmed, with costs.

 All the cited cases involved the construction and application of a “ Use of Other Automobiles ” clause formerly contained in automobile liability policies. This clause excluded from coverage any automobile “ furnished for regular use ” to the named insured or a member of his household. The family policy involved here afforded much broader coverage with respect to “ non-owned automobiles ”,