Irving Younger, J.
In many, if not most, civil cases, the jury does what Adam did on naming-day in Eden. One imagines him confronted by the fact — a creature like a mountain top with a voice like a typhoon — and by an assortment of possible words for that fact — “ rabbit,” perhaps, or “ grasshopper ” or “ elephant. ’ ’ Adam chose the one that fit, and ‘ ‘ that was the name thereof.” (Genesis 2:19.) So a jury confronts the fact — a *792 plaintiff did this, a defendant did that — and chooses from the vocabulary of the law the word that fits — negligence, contributory negligence, or whatever. Thus it arrives at a verdict.
Here, briefly, the fact is that a girl has died of heroin addiction. The word chosen by the jury to fit that fact is ‘1 accident. ’ ’ The question, in a case counsel state is one of first impression in New York, is whether judgment should be entered against the defendant, pursuant to its policy, for double indemnity. I answer the question affirmatively.
On June 21, 1969, Betty Davis, 23 years old, said good night to her mother and went out for the evening. She never returned. On June 28,1969, her body was found on the roof of a Manhattan tenement building. The Medical Examiner performed an autopsy and concluded that Betty, who had been addicted to heroin for several years, had died of 1 ‘ acute and chronic intravenous narcotism. ’ ’
The John Hancock Mutual Life Insurance Company had, in 1967, insured Betty’s life for $1,000. The policy contained a provision whereby double the face amount would be paid should the insured’s death result “ solely from accidental bodily injury.” The term “ accidental death ” was defined as “ death resulting directly and solely from (a) an accidental injury visible on the surface of the body or disclosed by an autopsy ’ ’. The policy excluded from the meaning of*1 accidental death ’ ’ a death resulting from “ (1) any infection or bodily or mental infirmity or disease existing before or commencing after the accidental injury * * * (2) intentionally self-inflicted injury ”. The company conceded that Betty had not committed suicide, but declined to pay the double indemnity on the ground that Betty's death was not accidental. This action ensued.
The trial was by jury. Plaintiff adduced expert medical testimony to the effect that heroin addiction is not a mental or a physical disease or infirmity, that an addict’s injection of heroin or morphine is not an injury, and that an addict takes a narcotic in order to attain a state of euphoria, not in order to harm or kill himself. The defendant adduced expert medical testimony to the effect that addiction is a serious phychiatric disease, that every addict is aware of the possibility of death by “ overdose,” and that Betty Davis’ death was no accident.
As permitted by CPLR 4111-, I called upon the jury to return a special verdict, submitting to them six written questions, of which the following are now pertinent:
(1) Was Betty Davis’ death an accidental death?
(2) With respect to her use of narcotics, was Betty Davis suffering from a bodily or mental infirmity nr disease?
*793 (3) If a narcotics user takes a nonlethal dose of narcotics, does he thereby inflict an injury upon himself?
The jury’s answers were, as to (1), yes; as to (2), no; as to (3), no.
If judgment is entered in accordance with the special verdict, it will be in plaintiff’s favor. Defendant moves for judgment notwithstanding the special verdict, arguing that, as a matter of law, Betty Davis’ death was either not an accident or was the result of a self-inflicted injury.
In essence, defendant urges me to hold it incontrovertible and hence conclusive that heroin addiction is a “ disease,” as that term is understood by physicians, and that an injection of heroin or morphine is a self-inflicted injury. There are cases, to' be sure, in which courts have held matters of medical science — specifically, the results of blood grouping tests — to be incontrovertible and hence conclusive. (See Jordan v. Mace, 144 Me. 351 [1949]; State ex rel. Steiger v. Gray, 145 N. E. 2d 162 [Ohio Juvenile Ct., 1957].) This case is different. We are not concerned here with the reliability of a laboratory technique or with the truthfulness to nature of a theorem of science. Bather, we are concerned here with the terms of an insurance policy, cast in ordinary language every adult has used thousand of times, and with a mode of death not expressly covered by those terms. The jury was asked, in essence, to determine from the language of the policy whether the parties intended a death like Betty Davis’ to be subject to the double indemnity provision. Each side adduced expert testimony favorable to its position. The jury’s attention was directed to the language of the policy, and the jury thereupon made its decision. It goes without saying that what I would myself have decided on this record is quite beside the point. The issue is whether the jury’s special verdict is supported by the evidence. I hold that it is. It was the jury’s province to assess the persuasiveness of the witnesses, and I therefore deny defendant’s motion for judgment non obstante veredicto. In doing so, I accept the decision and reasoning of the Supreme Court of Pennsylvania in Beckham v. Travelers Ins. Co. (424 Pa. 107 [1967]) and decline to follow the Texas Court of Civil Appeals in Great Nat. Life Ins. Co. v. Chapa (373 S. W. 2d 280 [1963].)
I note, finally, that, while our own Court of Appeals has apparently not addressed itself to the issue presented here, it has held that, on the similar question of death by accident or by suicide, it will normally be for the jury to decide. (Wellisch v. John Hancock Mut. Life Ins. Co., 293 N. Y. 178 [1944]. See, also, Mansbacher v. Prudential Ins. Co., 273 N. Y. 140 [1937].) The *794 Legislature’s reference, in section 200 of the Mental Hygiene Law, to ‘1 the disease of drug addiction ’ ’ is hardly to the contrary. A finding of fact by the Legislature does not amount to a statutory direction so authoritative that a jury, in the concrete and particular circumstances of a vigorously contested lawsuit, will not be permitted to find differently.
Judgment will be entered on the special verdict in favor of plaintiff for $2,000, with interest from June 28, 1969.