Fuchsberg, J.
On August 20, 1971, 20-year-old Douglas Miller, who had then been steadily employed by the Long Island Railroad for over one year, was found dead at the home of his parents with a needle in his wrist. There were no witnesses to the insertion of the needle or to the death.
Young Miller had seemed happy in his employment and had never manifested any evidence of emotional imbalance. While the deputy medical examiner who performed the autopsy, and who ascribed the death to an overdose of heroin, found scarring indicative of habitual drug use on the decedent’s arms, witnesses who knew him testified that no effects of his prior *676 drug use had ever been observed by them. A medical expert who testified for the plaintiff expressed the opinion that the death was an accident.
As a member of the Brotherhood of Locomotive Firemen and Enginemen, Miller had designated his mother as beneficiary of a $50,000 group insurance policy issued by the defendant to cover loss of life "resulting directly and independently of all other causes from bodily injuries caused by accident”. Specifically excluded were death resulting from "A. Intentionally self-inflicted injuries, suicide or any attempt thereat * * * [or] D. Illness, disease * * * [or] body infirmity”. The policy made no specific reference to narcotics or other drugs as such.
The defendant having rejected the mother’s claim for the death benefit, issues have been raised requiring determination as to whether the circumstances of the death brought it within the "accident” language of the insurance policy or the exclusions contained therein, and as to whether, in any event, recovery is interdicted on public policy grounds because the possession of heroin is a crime (Penal Law, art 220). The trial court, sitting without a jury, decided both issues in favor of the plaintiff. The Appellate Division has affirmed the judgment entered on that decision. For the reasons which follow, we believe it to be the correct result.
The multifaceted term "accident” is not given a narrow, technical definition by the law. It is construed, rather, in accordance with its understanding by the average man (Burr v Commercial Travelers Mut. Acc. Assn. of Amer., 295 NY 294; Berkowitz v New York Life Ins. Co., 256 App Div 324), who, of course, relates it to the factual context in which it is used (Wellisch v John Hancock Mut. Life Ins. Co., 293 NY 178; 10 Couch 2d, Insurance, § 41:26, p 45).
Taken literally, true "accidents” may be rare occurrences. Most violent fatalities, where they do not result from intentional wrongdoing, are due to negligence, recklessness or poor judgment. Indeed, Mr. Justice Cardozo went so far as to suggest that " 'in the strictest sense and dealing with the region of physical nature there is no such thing as an accident’ ” (Landress v Phoenix Ins. Co., 291 US 491, 499, citing Brintons v Turvey, LR [1905] AC 230, 233).
For instance, though one who drives a car while drunk metaphorically may be said to be "committing suicide”, it does not necessarily follow that his resulting death is to be regarded as "intentional” (Beckham v Travelers Ins. Co., 424 Pa *677 107, 118 [concurring opn]). Instead, "[i]n construing whether or not a certain result is accidental, it is customary to look at the causalty from the point of view of the insured, to see whether or not, from his point of view, it was unexpected, unusual and unforeseen” (1A Appleman, Insurance Law and Practice, § 391, p 22, citing McQuade v Prudential Ins. Co. of Amer., 166 Misc 524).
Thus, in the case before us, while it may be inferred that the decedent’s introduction of heroin into his body was intentional, there is no proof whatsoever that he intended it to have fatal consequences or even that he was aware of the fact that the particular dose of heroin which he was taking at the time posed any threat of death at all. In today’s society, the knowledge has been forced upon us that heroin and other drugs are most often taken to induce a temporary aura of relaxation and well-being completely incompatible with any desire on the part of their users to depart life. When we add to that the fact that the brotherly admonition that "it is bad for you” is likely to make as small an impression on drug users as do, for example, the regularly ignored official government warnings about the dire effects of cigarette smoking, can it be said that the trial court did not have the right to conclude that Douglas Miller, in injecting drugs into his bloodstream, did so without any thought of death in mind? We think not.
Perhaps a paraphrase of language to be found in Beckham v Travelers Ins. Co. (424 Pa 107, 118-119 [concurring opn], supra) is apt here:
"Anyone who has read the classic Confessions of an English Opium Eater by Thomas De Quincy will understand that beguiling heaven toward which [Douglas Miller might have thought he was] directing his steps as he followed the inviting primrose path in the soothing dreams of nepenthe.
* * *
"He [may have] used bad judgment, he [may have been] reckless, [but everything points to the fact that] he did not want to bring bereavement and sadness to his mother”.
(Accord Pilcher v New York Life Ins. Co., 25 Cal App 3d 717; Davis v John Hancock Mut. Life Ins. Co., 64 Misc 2d 791; [Younger, J.]; cf. Wellisch v John Hancock Mut. Life Ins. Co., 293 NY 178, supra.)
Such an appreciation of the reality of things requires that *678 the word "accident” in the policy here be deemed to pertain not only to an unintentional or unexpected event which, if it occurs, will foreseeably bring on death, but equally to an intentional or expected event which unintentionally or unexpectedly has that result.
In contrast to cases in some other jurisdictions where there is no right to recover unless the means themselves are accidental (see Ann., 52 ALR2d 1085, §§ 2, 3, 4; 10 Couch 2d, Insurance, § 41.28, p 47), New York long ago rejected such an over-nice separation of accidental means from accidental death as one "certainly not understood by the average man and he is the one for whom the policy is written” (Burr v Commercial Travelers Mut. Acc. Assn. of Amer., 295 NY 294, 303, supra; see, also, Mansbacher v Prudential Ins. Co. of Amer., 273 NY 140; Morgan v Indemnity Co. of North Amer., 302 NY 435, mot to amend remittitur den 302 NY 940; cf. McGroarty v Great Amer. Ins. Co., 36 NY2d 358; but see Powley v Equitable Life Assur. Soc. of U. S., 257 App Div 324, affd 284 NY 664).
The spirit of that quotation also comports with the horn-book rule that policies of insurance, drawn as they ordinarily are by the insurer, are to be liberally construed in favor of the insured (Cantanucci v Reliance Ins. Co., 35 NY2d 890, affg on mem thereat 43 AD2d 622, 623; Bronx Sav. Bank v Weigandt, 1 NY2d 545, 551; Hartol Prods. Corp. v Prudential Ins. Co. of Amer., 290 NY 44, 49). That principle is kin to the proposition that " '[i]f an exclusion of liability is intended which is not apparent from the language employed, it is the insurer’s responsibility to make such intention clearly known’ ” (Sperling v Great Amer. Ind. Co., 7 NY2d 442, 447; Aetna Cas. & Sur. Co. v General Cas. Co. of Amer., 285 App Div 767, 770).
It is the application of these principles which requires us to reject not only defendant’s contention that the death here was not accidental as a matter of law, but also its assertion that the relationship between decedent’s addiction to narcotics and his death brings this case within the policy’s exclusion of t coverage for death "resulting from” "disease” or "infirmity” or from "self-inflicted injuries” as a matter of law..
Defendant’s reliance on the exclusions is not advanced by its citation of the Supreme Court’s characterization of heroin addiction as a "disease” to distinguish it from a crime, made in the far different atmosphere of a successful challenge to a State law which had declared it to be penal (Robinson v *679 California, 370 US 660). Within the framework of the present case, where the defendant was the drafter of the policy it sold, and, where, therefore, ambiguities in its language were to be resolved against it, the trial court certainly was free to accept contemporary usages of the word "disease” other than the one defendant urged upon it (Davis v John Hancock Mut. Life, 64 Misc 2d 791, 793, supra; cf. Berkowitz v New York Life Ins. Co., 256 App Div 324; see, also, Insurance—Conditions Constituting Disease, Ann., 61 ALR3d 822, esp § 21, pp 859-860). If the defendant intended to exclude death caused by an overdose of narcotics from its coverage, or to have narcotics injection or addiction defined as a "disease” or "infirmity”, there was nothing to prevent it from inserting in its contract of insurance plain and unmistakable language that said so (13 Appleman, Insurance Law and Practice, § 7381, pp 10-11; cf. Bronx Sav. Bank v Weigandt, 1 NY2d 545, 551, supra; Sommer v Guardian Life Ins. Co. of Amer., 281 NY 508, 513; Drilling v New. York Life Ins. Co., 234 NY 234).
Turning now to defendant’s public policy argument, we observe that the death caused here by the heroin was no more and no less accidental because the decedent’s possession of the heroin in the course of its self-administration was violative of our criminal laws. The punishment provided by those laws is explicit. By no means do they include forfeiture of life insurance rights so that insurance carriers become substitute beneficiaries (cf. Osborne v International Ry. Co., 226 NY 421). Even when a beneficiary of a life insurance contract is barred by public policy from recovery of its proceeds because he has feloniously caused the death of the assured, the insurer does not thereby avoid liability but must instead pay the proceeds to an alternate beneficiary or to the assured’s estate (Matter of Kaplan, 49 Misc 2d 335, 337 [Bennett, S.], cited with approval in Pertie v Chase Manhattan Bank, 33 NY2d 846, 848; Matter of Pinnock, 83 Misc 2d 233; Matter of Loud, 70 Misc 2d 1026 [Sobel, S.]).
It is well to remember too that "the right of private contract is no small part of the liberty of the citizen, and the usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare” (Baltimore & Ohio Ry. Co. v Voight, 176 US 498, 505). And, moving from the general to *680 the specific, whatever public policy argument could conceivably be made if there had been any demonstration whatsoever that the result urged upon us by the defendant would have a substantial deterrent effect on narcotics addiction, the simple fact is that not an iota of proof to that effect was even offered. (Cf. Pilcher v New York Life Ins. Co., 25 Cal App 3d 717, supra.)
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order affirmed, with costs.