**CONTINENTAL COPPER & STEEL INDUSTRIES, INC., Plaintiff,**

v.

**Henry Ralph Rokeby JOHNSON, Excess Ins. Co., H. S. Weavers, English and American, Stronghold Ins. Co., Turegum Ins. Co. and Assicurazioni Generali, Defendants.**

**No. 79 Civ. 1494 (RWS).**

United States District Court,
S. D. New York.

May 22, 1980.

Hall, Dickler, Lawler, Kent & Howley, New York City, for plaintiff; Joseph Chase and Robin Hirsch, New York City, of counsel.

Mendes & Mount, New York City, for defendants; Daniel H. Murphy, II, and Arthur J. Washington, III, New York City, of counsel.

## OPINION

SWEET, District Judge.

This is a diversity action by Continental Copper & Steel Industries, Inc. ("Continental") seeking reimbursement of funds expended by Continental to indemnify five of its directors under a directors and officers liability insurance policy (the "Policy") issued by the defendants (the "Issuers"). The parties have filed a stipulation of material facts and have cross-moved for summary judgment on the issue of liability. Continental's motion is granted, and the Issuers' motion is denied.

The claims in this action arise out of expenses incurred by Continental in a prior action in this court. *International Halliwell Mines, Ltd. v. Continental Copper & Steel Industries, Inc.*, 70 Civ. 1400, *district court opinion entered* January 13, 1976 (S.D.N.Y. Bonsal, J.), *aff'd*, 544 F.2d 105 (2d Cir. 1976) (the "*Halliwell* action"). The complaint in that action alleged that Continental and five of its directors had breached a fiduciary duty to Halliwell Mines, Ltd. ("Halliwell") by coercing it to enter into improvident contracts with Continental. In 1959, Continental had contracted with Halliwell for the supply of copper by Halliwell's wholly owned subsidiary, whose acronym is Sedren. When Sedren was unable to perform the contract, Continental stepped in to help obtain financing. In exchange, Continental, through its president Mortimor S. Gordon, demanded price and supply concessions. Later, Halliwell agreed to permit five directors of Continental to sit on its own board, which consisted of eleven members. In 1964, Halliwell, Sedren and Continental entered into an agreement extending Halliwell's time to comply with the 1959 agreement to deliver copper and requiring Sedren to deliver all of its output to Continental. In 1967, the parties executed new agreements further extending Halliwell's time to comply and containing new price concessions. Halliwell alleged that, by forcing it to execute the 1964 and 1967 agreements, Continental and its five directors who sat on Halliwell's board had breached their fiduciary duties to Halliwell. Halliwell claimed that the 1964 and 1967 agreements contained unfair price concessions and supply rights, and that the inequitable terms of these agreements resulted from the domination of Halliwell by Continental and five Continental directors, Mortimor Gordon, Walter H. Knorr, Samuel Ungerleider, Arthur Wheeler and Harry Harris (the "individual defendants") who sat on Halliwell's board as Continental's nominees.

Following a trial, Judge Bonsal ruled that a settlement agreement executed by Halliwell and Continental in 1968 had released all claims arising out of the 1964 and 1967 agreements against both Continental and the individual defendants whose alleged breaches of fiduciary duty had been performed while "acting as agents or servants of Continental" rather than seeking personal benefit.

The Court of Appeals affirmed Judge Bonsal's findings as to both the validity and the scope of the release. 544 F.2d at 108–110. With respect to the latter point, the Court of Appeals stated,

> Sympathetic as one may be to the enforcement of claims of breach of fiduciary duty against individuals who purport to serve two masters with conflicting interests during a process of sensitive negotiation, New York law is well settled that the release of one wrongdoer releases all those who acted as its agents, absent an express reservation to the contrary. . .
>
> In the case at bar there is insufficient evidence to differentiate between the claims against the individual defendants and the claims against Continental, and plaintiffs failed to reserve a right to seek recovery from the individual defendants. The individual defendants are therefore released from liability.

*Id.* at 109–110 (citations omitted).

Continental alleges that the individual defendants in the *Halliwell* action incurred

$315,000 in defending the *Halliwell* action.[1] The defendants were indemnified for this expense by Continental in accordance with a provision in its charter.[2]

Continental then sought reimbursement for its indemnity payments pursuant to the Policy, which covered 95% of liabilities in excess of $20,000 incurred in defending certain legal actions against Continental's officers and directors during the pertinent time periods. Continental claimed reimbursement for $299,250. The Issuers refused to reimburse Continental for the legal expenses incurred by the individual defendants in *Halliwell*, and Continental then commenced this action.

Continental claims that the Policy covers the individual defendants' legal expenses in *Halliwell*, since they were sued for their activities while serving as directors of Continental. The Issuers contend that the causes of action asserted against the individual defendants in the *Halliwell* action arose out of their duties as directors of Halliwell, not their positions as directors of Continental. In the alternative, the Issuers argue that the individual directors were sued not in their individual capacities as directors of Continental, but merely as agents of Continental as to whom Continental was primarily liable as principal. Under either theory, the Issuers argue that the Policy is inapplicable to the legal fees incurred.

The coverage clause in the Policy provides as follows:

This Policy shall, subject to its terms, conditions and limitations as hereinafter provided, indemnify the Company for loss (as hereinafter defined) arising from any claim or claims which may be made during the Policy period against each and every person, jointly or severally, who was or now is or may hereinafter be a Director or Officer . . . of the Company . . ., by reason of any Wrongful Act (as hereinafter defined) in their respective capacities of Directors or Officers of the Company for damages, judgments, settlements, costs, charges or expenses incurred in connection with the defense of any action, suit or proceeding to which the Directors may be a party . . . or in connection with any appeal therefrom, pursuant to the law, common or statutory, or the Charter or By-Laws of the Company duly effective under such law, which determines and defines such rights of indemnity.

The Policy contains the following definition of "Wrongful Act:"

The term "Wrongful Act" shall mean any breach of duty, neglect, error, mis-statement, misleading statement, omission or other act done or wrongfully attempted by the Directors or any of the foregoing so alleged by any claimant or any matter claimed against them solely by reason of their being such Directors.

The issue in this case is whether the allegations against the individual defendants constitute "wrongful acts" as defined in the Policy so that the legal expenses incurred in resisting those claims are "losses"[3] subject to reimbursement.

1. This amount is not in dispute on this motion for partial summary judgment, which involves only the issue of liability.

2. The indemnification provision in Continental's charter provides in part as follows:

Each person who is, has been or hereafter shall become a director . . . of the Corporation or who is, has been or hereafter shall become a director . . . of any corporation which he served as such at the request of the Corporation . . . shall be indemnified by the Corporation against the reasonable expenses, including attorney's fees, actually and necessarily incurred by him in connection with the defense of any action, suit or proceeding in which such person or estate is a party by reason of the fact that he . . . is or was a director, officer or employee of the Corporation, or of any corporation which he served as such at the request of the Corporation, or in connection with any appeal therein, except in relation to matters as to which it shall be finally adjudged in such action, suit or proceeding that such officer, director or employee is liable for negligence or misconduct in the performance of his duties.

3. The definition of loss in the Policy is as follows:

The term "loss" shall mean any payment made by the Company to a Director or Offi-

The court concurs with the parties that no factual issue remains which could preclude summary judgment in this case. The parties have stipulated to the operative facts and documents underlying this claim. The only remaining issue is what the basis of the claim against the individual defendants in *Halliwell* was. That presents a legal issue which must be determined by the court. The parties agree that New York law is applicable to the interpretation of the Policy.

After review of the pleadings and the decisions of the district and circuit courts in *Halliwell* as well as the Policy, I find that the expenses incurred in defending the *Halliwell* action fall within the coverage of the Policy. It is true that the complaint in *Halliwell* described the individual defendants as directors of Halliwell. However, the cause of action against the individual defendants did not differ from that against Continental. The claim against all parties was that Continental, through its directors and nominees, had dominated Halliwell and forced it to accept unfair contract terms. Although the individual defendants were serving as directors on Halliwell's board, they had gained that position only because of their responsibilities as directors of Continental.

There was no allegation in *Halliwell* that the individual defendants had engaged in activity as Halliwell directors which benefited them personally. This case thus differs from *Spring v. Moncrieff*, 10 Misc.2d 731, 173 N.Y.2d 86, 87–88 (N.Y.Co.Sup.Ct. 1958), which involved indemnification for claims asserted against a director because of "his participation in [certain] transactions as an individual," not "by reason of his having been a director . . . of the corporation." Similarly, in *National Industries, Inc. v. Richard Julian Percy Grant*,

No. 6710/73 (N.Y.Co.Sup.Ct.1980) (published in New York Law Journal, March 25, 1980), the claims against the directors of Pakco who were also directors of Crescent involved active dishonesty for personal benefit and thus did not concern their conduct "while acting in the capacities of Directors" of Cresent. By contrast, the *Halliwell* action did not allege personal misconduct by the individual defendants, but only conduct detrimental to Halliwell which benefited Continental.

In holding the release of Continental effective as to the individual defendants in *Halliwell*, both the district court and the Court of Appeals ruled that the individual defendants were being sued as agents and nominees of Continental. The district court found that the individual defendants were "acting as agents or servants of Continental," and that "they were serving the interests of Continental in much the same way as the majority of Halliwell directors were seeking to serve the interests of Halliwell and Sedren." Dist.Ct.Op. at 15–16. The Court of Appeals bottomed its ruling on the release issue on the fact that the individual defendants were sued as "agents" of Continental, 544 F.2d at 109, and stated that there was "insufficient evidence to differentiate between the claims against the individual defendants and the claims against Continental . . . ." *Id.* at 110. Had an independent basis for liability existed as to the individual defendants, the release of Continental would not have affected those independent claims.

The Issuers' principal argument is based on the language of the Delaware and New York indemnification statutes. Section 145(a) of the Delaware Corporation Law expressly provides that, in addition to the corporation's power to indemnify a person

cer as indemnity for a claim or claims against him arising out of those matters set forth in the Insuring Clause above and, subject to the applicable limits and conditions of this Policy, shall include damages, judgments, settlements and costs, charges and expenses, incurred in the defense of actions, suits or proceedings and appeals therefrom for which payment by the Company may be required or

permitted according to applicable law, common or statutory, or under provisions of the Company's Charter or By-Laws effective pursuant to such law; provided always that such subject of loss shall not include fines or penalties imposed by law or other matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

"by reason of the fact that he is or was a director, officer, employee or agent of the corporation," it may also indemnify a person who "is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation." Section 145(g) of the Delaware Corporation Law permits a corporation

> to purchase or maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the corporation as a director, officer, employee or agent of another corporation . . . against any liability asserted against him . . . in such capacity, or arising out of his status as such . . . . .

Section 723 of the New York Business Corporation similarly authorizes a corporation to indemnify a person for actions asserted against him "by reason of the fact that he . . . was a director or officer of the [indemnifying] corporation, or served [any] other corporation" at the request of the indemnifying corporation. *See Professional Insurance Co. v. Barry,* 60 Misc.2d 424, 303 N.Y.S.2d 556 (Sup.Ct.N.Y.Co.1969), *aff'd,* 32 A.D.2d 898, 302 N.Y.S.2d 722 (1st Dep't 1970). The Policy, by contrast, contains no express coverage for litigation expenses incurred as a result of service on the board of directors of another corporation at the request of Continental, but merely permits payment for "any matter claimed against them [Continental's directors] solely by reason of their being such Directors."

The Issuers contend that in view of the express authorization in the state statutes, reflected in Continental's charter, permitting indemnification for expenses resulting from a director's service at the behest of his corporation on a second corporation's board, the absence of specific language providing for coverage of such expenses in the Policy implies that no such coverage was intended. The Issuers urge that the extension of coverage from acts committed while serving on one corporation's board to those committed while serving other companies at the request of the first represents a significant enlargement of liability. They claim that if the parties had desired to extend the coverage of the Policy in such a substantial way, they would have employed specific language to demonstrate that intent.

While the Policy does not expressly include litigation expenses of directors while serving on other corporations' boards at the request of Continental, it also does not expressly exclude such expenses.[4] Moreover, the Policy's coverage extends to indemnification of Continental's directors for "any matter claimed against them solely by reason of their being such Directors." Several authors have commented upon the breadth of that language. *See* Johnston, *Corporate Indemnification and Liability Insurance for Directors and Officers,* 33 Bus.Law. 1993, 2017 (1978); Hinsey, *The New Lloyd's Policy Form for Directors and Officers Liability Insurance,* 33 Bus.Law. 1961, 1967 comment 4 (1978); Bishop, *New Problems in Indemnifying and Insuring Directors; Protection against Liability under the Federal Securities Laws,* 1972 Duke L.J. 1153, 1161. On its face, this language would appear to encompass the expenses incurred in this case which arose from the individual defendants' service on Halliwell's board solely by reason of their being directors of Continental.

It is a well established principle of insurance law that any ambiguity in an insurance policy must be construed against the issuer and in favor of coverage. *Breed v. Insur. Co. of N. America,* 46 N.Y.2d 351, 353, 413 N.Y.S.2d 352, 354, 385 N.E.2d 1260 (1978); *Miller v. Continental Insur. Co.,* 40 N.Y.2d 675, 389 N.Y.S.2d 565, 358 N.E.2d 258 (1976). In *Miller,* the New York Court of Appeals emphasized that since insurance policies are ordinarily drawn by the issuing companies, " ' . . . [i]f an exclusion of liability is intended which is not apparent from the language employed, it is the insur-

---

**4.** It is also noteworthy that although the Delaware statute authorizing a corporation to purchase indemnity insurance draws a distinction between insurance purchased to cover liability of persons serving as directors of the indemnifying corporation and that of persons serving as directors of a second corporation at the request of the first, the New York statute draws no such distinction. *See* N.Y.B.C.L. § 727.

 

er's responsibility to make such intention clearly known.'" 40 N.Y.2d at 678, 389 N.Y.S.2d at 567, 358 N.E.2d at 260, *quoting Sperling v. Great American Ind. Co.*, 7 N.Y.2d 442, 447, 199 N.Y.S.2d 465, 469, 166 N.E.2d 482 (1960).

The Issuers' argument with respect to statutory language at most demonstrates that the coverage clause in the Policy is ambiguous. However, any such ambiguity must be read in favor of Continental.[5] The absence of an express exclusion for expenses resulting from service by Continental's directors on the boards of other corporations at Continental's request strengthens the inference that such expenses are covered by the Policy. The purchase by Continental of indemnification insurance at a time when it had directed its officers and directors to sit on Halliwell's board evidences the intent of the parties that the coverage of the Policy would be coextensive with Continental's indemnification clause.

The court also rejects the Issuers' argument that if the individual defendants were sued only as agents of Continental, there is no coverage, since under New York law, there is no liability of a corporate agent for acts on behalf of his principal. *See Spring v. Moncrieff, supra*, 10 Misc.2d 731, 173 N.Y.S.2d at 88. The individual defendants were sued as individuals, and, even if they could not ultimately have been subjected to liability, they necessarily incurred expenses in gaining dismissal of the claims. Coverage under the Policy is not limited to expenses incurred in connection with valid causes of action against directors. However, as Continental concedes, to the extent that the Issuers can show at trial that the expenses claimed were in fact incurred on behalf of Continental rather than the individual defendants, such proof will reduce Continental's damages.

The parties are hereby ordered to submit a joint pre-trial order on or before June 15, 1980, specifying the issues which remain for trial.

---

**5.** Several authors have discussed the ambiguities in the coverage of the standard Lloyd's of London policy for directors and officers liability insurance. *See* Bishop, *New Cure for an Old Ailment: Insurance against Directors' and Officers' Liability*, 22 Bus.Law 92, 103 (1966); Note, *Indemnification of the Corporate Insider: Directors' and Officers' Liability Insurance*, 54 Minn.L.Rev. 667, 683. *See also* Note, *Insuring Corporate Executives against Liability under Rule 10b–5: First Principles and Second Thoughts*, 63 Nw.U.L.Rev. 544 (1968). It would be inappropriate to permit the Issuers to benefit from this ambiguity.