# SUPREME COURT OF THE STATE OF NEW YORK
## Appellate Division, Fourth Judicial Department

**735**

**CA 11-02383**

PRESENT: SCUDDER, P.J., CENTRA, FAHEY, PERADOTTO, AND SCONIERS, JJ.

---

JOHN CHRISTODOULIDES, M.D.,
PLAINTIFF-RESPONDENT,

V                                                    MEMORANDUM AND ORDER

FIRST UNUM LIFE INSURANCE COMPANY,
DEFENDANT-APPELLANT,
AND LIFE INSURANCE COMPANY OF BOSTON AND
NEW YORK, DEFENDANT.
(APPEAL NO. 1.)

---

PHILLIPS LYTLE LLP, BUFFALO (PAUL K. STECKER OF COUNSEL), FOR
DEFENDANT-APPELLANT.

GROSS, SHUMAN, BRIZDLE & GILFILLAN, P.C., BUFFALO (HUGH C. CARLIN OF
COUNSEL), FOR PLAINTIFF-RESPONDENT.

---------------------------------------------------------------------------------

Appeal from a judgment of the Supreme Court, Erie County (Joseph R. Glownia, J.), entered November 17, 2011.  The judgment awarded plaintiff money damages against defendant First Unum Life Insurance Company.

It is hereby ORDERED that the judgment so appealed from is unanimously vacated and the order entered November 1, 2011 is modified on the law by denying that part of plaintiff's cross motion against defendant First Unum Life Insurance Company, and by vacating the declaration and the award of damages against that defendant, and as modified the order is affirmed without costs.

Memorandum:  Plaintiff commenced this action seeking, inter alia, a declaration that he is entitled to lifetime benefits under three disability insurance policies issued to him by defendants.  Defendant First Unum Life Insurance Company (First Unum) issued one of the disability insurance policies, and defendant Life Insurance Company of Boston and New York (BNY) issued the remaining two policies.  The First Unum policy insures against "(1) loss or disability resulting directly and independently of all other causes from accidental bodily injury occurring during any term of this policy, being hereinafter referred to as 'such injury' or (2) loss or disability commencing during any term of this policy, resulting from sickness, hereinafter referred to as 'such sickness.' "  Where the loss or disability results from an accident, the insured is entitled to lifetime benefits.  Where the loss or disability results from sickness, however, the maximum benefit period is to age 65.

Under the BNY policies, the maximum benefit period similarly depends upon whether the disability is caused by "injury" or "sickness."  Where, as here, the insured is between the ages of 63 and 64 at the onset of disability, the maximum benefit period is "lifetime" for disability caused by injury and 24 months for disability caused by sickness.  The BNY policies define "injury" as "accidental bodily injury that . . . results directly and independently of all other causes in loss or disability."  "Sickness" is defined as "a sickness or disease first diagnosed or treated while the Policy is in force and resulting in a loss or disability commencing while the Policy is in force."

In September 2006, plaintiff experienced pain in his right shoulder while lifting five-pound weights in his home as part of his regular exercise routine.  A February 2007 MRI revealed a rotator cuff tear in plaintiff's right shoulder.  As a result of the pain in his shoulder, plaintiff was unable to perform his duties as a physician, and he ceased working as a urologist in June 2007.  Thereafter, plaintiff applied for benefits under the three disability policies issued by defendants.  Defendants determined that plaintiff was totally disabled and paid him disability benefits under the policies for a period of 24 months.  At that point, defendants ceased paying benefits on the ground that plaintiff's disability was the result of "sickness" as opposed to "injury" within the meaning of the policies.  Defendants moved for summary judgment dismissing the complaint, and plaintiff cross-moved for summary judgment declaring that he is entitled to lifetime benefits under the three policies and awarding him damages in the amount of the benefits allegedly owed under the policies.  Supreme Court denied defendants' motion, granted plaintiff's cross motion, and awarded judgment against First Unum in the amount of $18,172.50 (appeal No. 1) and against BNY in the amount of $174,670 (appeal No. 2).  In both appeals, defendants contend that the court erred in denying their motion for summary judgment because plaintiff's alleged disability did not result from an "accidental bodily injury" resulting "directly and independently of all other causes," as required by the subject insurance policies.

Contrary to defendants' contention, we conclude that plaintiff established as a matter of law that his shoulder injury constitutes an "accidental bodily injury" within the meaning of the subject policies. "As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning . . ., and the interpretation of such provisions is a question of law for the court" (*White v Continental Cas. Co.*, 9 NY3d 264, 267; *see Vigilant Ins. Co. v Bear Stearns Cos., Inc.*, 10 NY3d 170, 177).  "Unless otherwise defined by the policy, words and phrases are to be understood in their plain, ordinary, and popularly understood sense, rather than in a forced or technical sense" (*Hartford Ins. Co. of Midwest v Halt*, 223 AD2d 204, 212, *lv denied* 89 NY2d 813; *see Rocon Mfg. v Ferraro*, 199 AD2d 999, 999).  Thus, "[t]he meaning of the language used in the policy must be found in the common sense and common speech of the average person" (*Stainless, Inc. v Employers Fire Ins. Co.*, 69 AD2d 27, 32-33, *affd* 49 NY2d 924; *see Canfield v Peerless Ins. Co.*, 262 AD2d 934, 934, *lv denied* 94 NY2d 757).  Of course, "[i]f the terms of

a policy are ambiguous, . . . any ambiguity must be construed in favor of the insured and against the insurer" (*White*, 9 NY3d at 267; *see United States Fid. & Guar. Co. v Annunziata*, 67 NY2d 229, 232; *Salimbene v Merchants Mut. Ins. Co.*, 217 AD2d 991, 992).

The subject insurance policies do not define the terms "accident" or "accidental." "When interpreting the multifaceted term accident in an insurance policy, we must construe the word accident as would the ordinary [person] on the street or ordinary person when he [or she] purchases and pays for insurance . . . The term is not given a narrow, technical definition by the law. It is construed, rather, in accordance with its understanding by the average [person] . . . who, of course, relates it to the factual context in which it is used" (*Michaels v City of Buffalo*, 85 NY2d 754, 757 [internal quotation marks and emphasis omitted]; *see Arthur A. Johnson Corp. v Indemnity Ins. Co. of N. Am.*, 7 NY2d 222, 227). Black's Law Dictionary defines "accident" as, inter alia, "[a]n unintended and unforeseen injurious occurrence" (*id*. at 16 [9th ed 2009]). In New York, unlike other jurisdictions, there is no distinction made between "accidental means and accidental results" (*Burr v Commercial Travelers Mut. Acc. Assn. of Am.*, 295 NY 294, 302; *see Miller v Continental Ins. Co.*, 40 NY2d 675, 678). Thus, the term "accident" in an insurance policy may "pertain not only to an unintentional or unexpected event which, if it occurs, will foreseeably bring on [injury], but [may pertain] equally to an intentional or expected event which unintentionally or unexpectedly has that result" (*Miller*, 40 NY2d at 678; *see Salimbene*, 217 AD2d at 993-994).

Here, there is no question that, although plaintiff was intentionally engaged in the exercise of lifting weights at the time of his injury, the resulting rotator cuff tear was unintended, unexpected, and unforeseen (*see* Black's Law Dictionary, accident; *Miller*, 40 NY2d at 677-678; *see also Lachter v Insurance Co. of N. Am.*, 145 AD2d 540, 541). Defendants, however, contend that plaintiff's rotator cuff tear does not qualify as an accidental bodily injury because it occurred during the course of his "ordinary physical activity," i.e., his usual workout routine. We reject that contention. Defendants rely on *Valente v Equitable Life Assur. Socy. of U. S.* (120 AD2d 934, 935, *lv denied* 68 NY2d 608), in which this Court concluded that a heart attack suffered as a consequence of ordinary physical exertion does not constitute an accident within the meaning of the accidental death provision of an insurance policy on the life of the plaintiff's decedent. That reliance is misplaced, however. The decedent, a 41-year-old man with no history of heart disease, had a heart attack and died shortly after lifting and moving large cartons of coffee as part of his routine duties at the supermarket where he worked (*id*. at 934). The insurance policy in *Valente*, unlike in this case, specifically excluded coverage for "[l]osses resulting from, or caused directly or indirectly" by a "bodily . . . infirmity" (*id*. at 935). Although this Court noted that "the sudden heart attack suffered by plaintiff's decedent was neither expected nor foreseen by him," we reasoned that "the problem with that definition of accidental death is that it would include, *contrary to*

*the clear intent of the policy*, any sudden death resulting from natural causes" (*id.* [emphasis added]).

We agree with defendants, however, that the court erred in granting plaintiff's cross motion for summary judgment because there is an issue of fact whether plaintiff's disability resulted from the September 2006 accident, "directly and independently of all other causes" (*see Arbour v Commercial Life Ins. Co.*, 240 AD2d 1001, 1001-1003; *see generally Lachter*, 145 AD2d at 541). Defendants submitted, inter alia, plaintiff's deposition testimony in which he testified that he first experienced pain in his right shoulder in 2001, approximately five years before the subject accident. An X ray report of plaintiff's right shoulder from April 2001 found "[i]nferior spurring from the acromion," and an April 2001 MRI report noted a "[s]mall 5 or 6 mm anterior rotator cuff tear" in the same shoulder. The February 2007 MRI of plaintiff's right shoulder revealed a "[r]ight side supraspinatus tendon rotator cuff insertion tear about 1.5 cm gap present," and the report states that "[t]his is a changing pattern of progression compared to the 2001 baseline exam." Defendants also submitted a March 2007 report from an orthopedic surgeon who noted that plaintiff reported a "similar episode back in 2001," and that the 2001 MRI "revealed a partial-thickness tear of the rotator cuff." The orthopedic surgeon concluded that the April 2001 MRI films of plaintiff's right shoulder showed "some evidence of rotator cuff tendinosis." In addition, defendants submitted a 2007 BNY claim form, in which plaintiff described the onset of his symptoms as "years ago." Defendants further submitted the affirmation of another orthopedic surgeon who, upon reviewing plaintiff's medical records, opined that the rotator cuff tear diagnosed in 2007 "was the result of normal and expected progression of the smaller tear with which he was diagnosed in 2001, as a result [of] an ongoing degenerative process in the right shoulder." That orthopedic surgeon further opined that plaintiff's September 2006 onset of shoulder pain was "not associated with any specific acute new trauma or injury," but rather was caused by his "underlying degenerative condition of his right shoulder."

Defendants also submitted, however, plaintiff's deposition testimony to the effect that his 2001 right shoulder pain was gone in about 10 days or two weeks, that the pain was "not significant," and that it did not interfere with his ability to practice medicine. Plaintiff further testified that he experienced "[n]o symptoms" between 2001 and September 2006. The statement of the attending physician accompanying plaintiff's 2007 claim for benefits from BNY indicates that plaintiff's symptoms first occurred in September 2006, and that plaintiff had never had the same or similar condition. Finally, in opposition to defendants' motion and in support of his cross motion, plaintiff submitted an affidavit in which he averred that his 2001 shoulder episode resolved in 10 to 14 days, that he did not lose any time from work as a result of that episode, and that he had "no further discomfort or limitation with [his] right shoulder until September, 2006."

We therefore vacate the judgment in each appeal and modify the

single order underlying the judgments by denying plaintiff's cross motion for summary judgment, and by vacating the declarations and the award of damages against each defendant.

Entered:  June 15, 2012                          Frances E. Cafarell
                                                 Clerk of the Court